Good morning. May it please the court. Myself and my co-counsel, Mr. Jason Grahams, who has already argued before the court previously today, have the pleasure of representing Mr. Russell Knowles, who is the plaintiff in this matter, which is a state law class action involving breach of contract and negligence by TD Ameritrade in performing its functions as an investment advisor and management of a discretionary investment account and making certain trades that were required to be made in Mr. Knowles' account in that capacity. The lower court was confronted with a motion to dismiss under Rule 12b-6 and unfortunately did not employ the proper standard in evaluating and ruling upon that motion. As the court is aware, the lower court, as well as this court in a de novo review, is required to accept as true the allegations of the complaint and they need only a state of plausible claim for relief. Unfortunately, the lower court engaged in a fact-finding expedition at the pleading stage and resolved completing claims of what contract terms in these documents, how they should be interpreted and what they mean. The second amended complaint, which was the operative complaint, contains no allegations at all of any kind of deceptive conduct, any misrepresentation or omission and it's alleged because we have no such knowledge that any such conduct actually occurred. So the plaintiff, Mr. Knowles, didn't allege any deceptive conduct. He's not aware of any that happened and it's no part of his complaint. Counsel, what specific provision of the agreement does the second amended complaint allege to have been violated? There are several provisions that are alleged to be violated, but one that's at the heart of the matter is the tax loss harvesting provision, which is on page 179 of the joint appendix. That's part of it. Go ahead. Well, this tax loss harvesting feature, just to explain a little bit by way of background, these accounts only invest in exchange-traded funds. One of the types of exchange-traded funds that's in the account is a U.S. stock fund. And so in a situation like what occurred here, if the U.S. stock fund held in your account suffers a loss in value, TD Ameritrade has this tax loss harvesting feature where if you choose to take advantage of it, you can have them automatically sell the fund that's decreased in value and replace it with a comparable investment. Counsel, what I'm looking for is the specific language. Certainly, Judge. And the language that's there says, for clients who have enrolled in the TLH feature, tax loss harvesting, each trading day, TDAIM, will review your account for any investments that have unrealized losses. Specifically, we look at the individual tax lot to identify losses meeting or exceeding a specified loss threshold. And here's the key. If the threshold is met, that tax lot will be sold. To replace the sold security, we will buy shares of a replacement security that is closely correlated to the sold security to help maintain your portfolio's asset allocation and risk characteristics. So is it the key language, we will buy shares? That is the very key language, and that's what they failed to do here. Because the heart of the dispute is, they don't disagree that they had to buy shares of a replacement security. The issue is the time of performance of that obligation. And essentially, they are now, they advanced before the lower court and they advanced before this court. Kind of a ludicrous interpretation of that requirement. In the context... Counsel, it seems to me there's sort of two sides of the coin here and two ways to look at it. On the one hand, you could look at it as a contract interpretation matters. What do those words mean, we will buy shares? On the other hand, you could look at it as an omission. They failed to tell you what would happen under this agreement. Well, Your Honor, respectively, there is no omission. The obligation to buy the shares is very concrete and unequivocal. If there's any ambiguity in the contract, it's on the timing of when that repurchase must occur. It's very clear that they have to repurchase the shares, and in the context of the other provisions of the contract, which the contract has to be looked at as a whole. If you can't look at... This is the key provision, but it has to be reviewed in the context of other promises contained in the account documents. So the assets held in this type of account are agreed to be invested in a certain way, in certain types of investments, but only a certain portion of the assets held in cash. And here, the failure to essentially immediately repurchase or replacement security after you sell one security for a tax loss for harvesting makes it impossible to comply with the other terms of the agreement. So is the problem here that there's a dispute as to the interpretation of the language, or is it they failed to tell you what they would do in the instance of the wash sale rule problem? It's the first of those problems. There's a dispute in the interpretation of the language. I kind of hesitate to say it's even a good faith dispute, because it's only a dispute at all, because they're advancing some absurd interpretations of how that language could be interpreted in order to excuse what they did here. But it is a factual dispute. Well, let's talk about the absurd question in some ways. I mean, really, if we're looking at it, this contract's silent as to the exact timing, and it seems pretty plain that under any law that's applicable here, that would then infer a reasonable time. And is a reasonable time a question that the court can decide is a question of law, or is it a question of fact that must be determined by the ultimate finder of fact? It is a question of fact that has to be determined by the ultimate finder of fact. And the lower court erred in making that factual determination on its own and deciding it as a matter of law. It's really reasonableness. I mean, it's conceivable that you could wait so long that no reasonable finder of fact could find that the time was reasonable, or it's conceivable that they acted quickly enough that no reasonable finder of fact could find that it was an unreasonable delay, right? But you're saying in the facts present in this case before this judge, there's a jury question on the issue of reasonableness. There is a jury question at a minimum, if not their actions being so unreasonable, but no jury could find in their favor. They waited 18 days to execute a stock trade that needed to occur immediately. But certainly, it's at a minimum a jury question. Well, what about the disclaimer that, in the next sentence, that TD Ameritrade does not represent or guarantee that the objectives of the feature will be met? The ultimate disclaimer. What about that saying that it wipes out anything else we've ever said about this? Well, they, of course, have relied upon that, and what they're attempting to do is have the court misunderstand that language and hope that it lets them off the hook. The tax loss harvesting, as we've discussed in our brief, is something that has to be done in a way that doesn't violate the wash sale rule that the IRS has. The wash sale rule's fairly complicated. I've learned more about it in the course of this case. But one of the things that's important is that they don't look at just the transactions that you make in this account. They look at transactions that your spouse makes, transactions you make in another account, transactions that a business owned by you makes. So TD Ameritrade, the import of that state, that disclaimer, is that we're not saying that you're actually going to be able to take this off your taxes, because we don't control what your spouse does. Yeah, but if your interpretation's right and say TD Ameritrade does not represent that your objectives will be met, are your objectives in buying this feature, are your objectives in taking this option, selecting this feature? I'm trying to think how they'd say it. They'd say it in salesman-type language. Pardon the gender there. So why isn't that the real reading of that? Since it didn't say your objectives, it says the objectives of this feature. Well, they describe at length what the purpose of tax loss harvesting is and what this is designed to accomplish. It was really not unclear, but if there was any ambiguity about how that disclaimer should be interpreted, that's another jury issue for resolution. So, counsel, this kind of circles back again, but why isn't it a problem of omission to not explain how they would handle the wash sale rule? That's kind of a big omission. There is no omission. They say very clearly what's going to happen is you need to be aware of the wash sale rule, because the wash sale rule might prevent you from being able to claim this on your taxes, but as far as what they're going to do, their obligations of what they're going to perform is very concrete and definite. They're going to keep an eye on your account. If one of your investments drops 5%, they're going to sell it for you, and they're going to immediately buy a comparable security in your account to replace it. So you're still invested in the same type of investment, and you might be able to get some tax benefit depending on the other activities that you've engaged in as an investor. Well, the word immediately, I don't think the word immediately is in there. That is, the word immediately is not there, as we've been discussing. The time for performance of this repurchase obligation is something that the court might have to interpret as being a reasonable time under the circumstances, but when you're talking about changes in the stock market and changes in stock prices, you need to move pretty quickly. So we characterized it in the complaint as contemporaneously, but it needs to be done right away or else the market could move, and you could change your client's position substantially by not placing this trade for them. You've reached your rebuttal, just so you know. Thank you, Your Honor. I will reserve my time. You may certainly. Ms. Buter? Yes, thank you. May it please the court and counsel, my name is Victoria Buter, and I represent the Appalese in this case, who I will refer to collectively as TD Ameritrade. In the order dismissing this case, the district court stated correctly, whether framed as broken promises or negligence, nondisclosure is the linchpin of the investor's case, and we submit that this is correct. No matter how you look at the allegations contained in the second amended complaint, the gravamen of the entire complaint involves allegations that TD Ameritrade purportedly misled or omitted to adequately inform the plaintiffs how the tax loss harvesting feature of their account operated. While the plaintiffs try to claim this action is primarily breach of contract or negligence, that simply fails. The plaintiffs have failed to identify any contractual obligation or any independent duty that requires TD Ameritrade to contemporaneously purchase. Let me pose the toughest question to you off the bat. You do have a contractual obligation to buy shares of a replacement security, right? That's a plain little contract agreement. That is correct, but that really is not the essence of the arguments or the allegations that are being made by the plaintiffs here. TD Ameritrade did purchase replacement security after it sold the security for tax loss purposes. And the contract states that we will do so. The contract does not state we will do so contemporaneously for good reason. TD Ameritrade does not control the market. TD Ameritrade does not control the availability of replacement securities. So it doesn't require a contemporaneous purchase, as plaintiffs allege. And essentially they're complaining about that very fact that we omitted, essentially, to inform them that if we were to place a sale for tax loss purposes, and if we did not immediately purchase a replacement security and their funds sat in cash, that they were subject to market risk, essentially, or subject to not gaining the uptake in the market. And that's really the essence of everything they're saying here. And that is we didn't disclose that to them, and we should have. Well, now, so you say you bought shares sometime, and even if it was years later, that would fulfill this contract under Nebraska common law. No, Your Honor, that's not what we're saying. On this reasonable time argument, first of all, I would note that was never raised or argued below. This is a situation where the first time we heard that the securities needed to be purchased in a reasonable time was on this appeal. And we believe that argument has been waived. But if the court considers it, it still does not save the claim from dismissal, either under SLUSA or for failure to state a claim. And that is because even if there's no contemporaneous requirement, which there is not in the contract, under the IRS wash sale rule, TD Ameritrade would be able to purchase the same security again within 30 days. So there is built into the contract that plaintiffs opted into and that plaintiffs chose to agree to, there is built in almost an outer time limit for the purchase of the replacement security. So you say a reasonable time is within 30 days reading all of six together, right? I think if you read all the contracts together, there's nothing to... No, no, just paragraph six. Restrict it to paragraph six. I think that's what it is. I think you're correct, Your Honor. I'm not sure that you can just read paragraph six, but I think when you look... Okay, tell me what I should read outside six, because that's all I looked at. And I think, Your Honor, you look at the entire service agreement and how this was supposed to work. When the plaintiffs opted into this tax loss harvesting feature, which, by the way, operated exactly as we said it would, the purpose of the tax loss harvesting feature was to sell a security at a loss so that they could offset that loss against capital gains. Plaintiffs have stated we did that. They are not alleging that they did not or were unable to offset a loss here. So it operated as it stated. But when you read the provision and you read the contract, TD Ameritrade was to purchase a replacement security. TD Ameritrade did purchase a replacement security. And looking at the issues that arise with the IRS wash sale rules, the only reason TD Ameritrade couldn't repurchase the same security immediately was because of that rule. And so when you look at the purpose of the tax loss harvesting provision, they would be able to purchase the same security right at that 30-day period of time, which means that there is built in that reasonable time that the plaintiffs are now for the first time on appeal alleging. Okay. Now, I don't mean to be rude or insistent, but is there any other section like this six that helps us? I know you keep referring to the structure of the agreement, and it's got several pages here in front of me, 20 pages or something like that, maybe more than that. But is there 27 pages? Is there anything else? This is just a disclosure brochure. Is there anything else in this that helps? Your Honor, I think there is. Because one of the other things that the plaintiffs are relying upon as part of their argument here is an argument that for some reason there had to be only 1 to 3 percent of the account maintained in cash at any given time. And that's another instance where the plaintiffs are essentially rewriting the contract because the contract does not require that there be any specific percentage in cash for any long period of time. There is a general target of 1 to 3 percent. And on page 187 of the joint appendix, there is a specific disclaimer there that states that the actual portfolio allocations from time to time may differ from the target allocations as a result of market movements or TD Ames adjustments. And so what the plaintiffs are arguing is the reason they believe there should be a contemporaneous purchase is to keep this 1 to 3 percent target in cash. And they allege that to be, in fact, I think in their briefing they say it's an undisputed contractual obligation. And it isn't undisputed. It is not a contractual obligation. There is only a general reference to the cash being 1 to 3 percent. And it specifically states that that may vary from time to time. You think 35 percent? Do they plead that 35 percent was in cash for a while? They do plead that for a great period. How long? Do they plead how long it was in cash? They do, for 18 days. Thank you. Okay, there are other sections of the service agreement or disclosure brochure that really help us in this case. Your Honor, I think we've dealt with the key provisions here. It is the provision on tax loss harvesting and then the provisions related to cash and the allocation of cash in the account. And to ask it plain, do you have other disclaimers? There are other disclaimers that I think you've already noted that are contained on page, for example, 179. The TD Ameritrade does not guarantee the performance or any guarantee of the tax loss harvesting. But, again, that goal was reached here in terms of what took place. I would like to note, I think, since we're talking a little bit about the specifics of the claim here, what plaintiffs are alleging is that there was a tax loss sale and a replacement security was not purchased for 18 days. In that 18 days, the market happened to go up, and they claim that they should have obtained the benefit of the market going up. Now, we all know that nobody has a crystal ball. We all know the broker-dealers are not guarantors of the markets. It was entirely possible that during those 18 days, the market could have decreased in value and the plaintiffs would have been better off in cash. So I think there's a practical issue here with regard to the fact they think there's any kind of wrongdoing when this is kind of hindsight by 2020 by the plaintiffs. But you agree, you do agree, that the asset allocation and risk characteristics are supposed to be the same, right? At the end of the 18 days? Not necessarily. Only if that's what the sentence says, the buy sentence. You know what I'm referring to, I bet. We will buy shares that are closely related to maintain asset allocation and risk characteristics. It's the same sentence. Correct, John. There are overall goals that exist and goals that are provided by the investor to TD Ameritrade that say we would like our overall portfolio to look like this. Certain risk characteristics, certain allocations. And that's what TD Ameritrade strives to do. But as stated, there are no guarantees that TD Ameritrade can do that because of the fact they don't have control of the markets. They don't have control over replacement securities. And so as noted in the disclaimer, we can't guarantee that. And we specifically note, as I noted on page 187 of the joint appendix, that those asset allocations may vary from time to time, whether that be through market changes or through TD Ameritrade's own adjustments. And that's what the plaintiffs agreed to when they opted in to this contract and opted in to the tax loss harvesting provision in their account. I would like to briefly address a couple of other issues here in addition to the breach of contract. And we do submit that the district court correctly dismissed that breach of contract claim for failure to state a claim as well as under SLUSA. And just to briefly address the SLUSA ruling here, the district court did find that SLUSA preempted the state law claims that were pled by the plaintiffs. And we submit that that is correct. The only SLUSA element that's an issue here is whether the plaintiffs have alleged that TD Ameritrade misrepresented or omitted a material fact. And we believe this is very evident from the pleadings. As I noted, if you review the second amended complaint in its entirety, it is clear that in substance what they are alleging is that TD Ameritrade failed to disclose essentially the side effects of opting in to the tax loss harvesting feature. In other words, they're alleging that TD Ameritrade misled them or failed to disclose what might happen if, following a tax loss sale, there was a replacement security that was not purchased right away and those funds sat in cash. That is the ground and that is the substance of their claims. They are completely unable to point to any contractual provision or any other duty that we submit exists here that would suggest that this could be a pure breach of contract claim. It simply is not. It is a claim based exclusively on misrepresentations or omissions alleged by the plaintiffs. And this is clear as well by looking at the evolution of the pleading in this case. If you look at the initial complaint that was filed by the plaintiffs, they didn't actually even mention the service agreement where the tax loss harvesting provision is contained. They relied upon TD Ameritrade's website and representations made therein. They then amended and they did reference the contractual provisions and deleted a reference to the website. And then we fully briefed a motion to dismiss, putting the plaintiffs on notice of our exact sluicer arguments and our exact failure to state a claim arguments. And the plaintiffs chose to amend a third time. And in that third time, they further scrubbed their complaint or attempted to scrub their complaint of any words that they believe may be problematic. But as the Supreme Court has stated and as this court has stated many times, you can't just scrub words from a pleading to avoid a sluicer preemption argument or dismissal. You have to look at the entire gravamen or substance. And here we submit that that substance is exactly what the district court finds that TD Ameritrade allegedly failed to disclose or misled the investors as to the purpose of the account, as demonstrated by the fact there are no contractual provisions that the plaintiffs can point to here. And they admit in their briefing that there is no contractual provision for a contemporaneous purchase of replacement security. Very briefly, I don't have much time. I will just touch on negligence since the district court did dismiss the negligence claim as well. We submit this was appropriate and proper. The plaintiffs had three opportunities to plead a negligence claim and they failed to. And we submit that that claim was promptly dismissed for two reasons. First of all, it was dismissed based on the economic loss doctrine, which provides that no independent tort claim can exist where the alleged duty that is breached arises solely from the contractual relationship between the parties. And that's exactly the case that we have here. The only reason there's any kind of relationship between the parties as to tax loss harvesting is because the plaintiffs opted in to a contractual relationship with TD Ameritrade related to that service. There is a defective product prong, I notice, in Nebraska law. But that's not been argued at any point that you sold a defective product. It has not been argued, Your Honor. I don't think that that can hold true here. This is not a defective product or a defective design. The tax loss harvesting feature was designed to sell a security at a loss when a certain loss threshold was met. Let me interrupt you, Counsel. Is it Nebraska law that product means like consumer product? This is kind of a consumer product, though. That's what you advertise, I think. Is it Nebraska law on what product means? Your Honor, I think there is Nebraska law on what product means. I think it is a consumer product, but that is not something that I could speak to in a lot of detail. What I would submit is regardless of how you look at the product issue here, because the quote product operated exactly how it was supposed to, it sold a security at a loss, giving the plaintiffs the opportunity to take a loss against a capital gain on their taxes. There simply cannot be a design defect type theory that's alleged. And as you noted, Judge, this has not been argued or advanced by the plaintiffs in any way, shape, or form. In short, I do want to address, by the way, quickly that the plaintiffs have argued that dismissal should not have been with prejudice. We submit that it's very clear in the Eighth Circuit that once you've had the opportunity to plead a claim several times, that it is perfectly acceptable to dismiss for failure to state a claim with prejudice. The plaintiffs here had three opportunities, and we submit they should not get a fourth bite of the apple to try to plead. And I assume by the briefing that no motion or anything was made to the district court saying, please make this without prejudice or sum up without prejudice or something like that. That is correct. No request for without prejudice, no motion for leave to amend, no post-judgment motion was ever submitted. We would, in fact, argue the argument has likely been waived. So for these reasons, we would ask that the court affirm the district court's opinion in its entirety. And I thank you for your time. Thank you, Ms. Buter, for the argument. Mr. Cox, you have rebuttal. Thank you, Judge. These are a lot of very dense, lengthy contract documents. So I think it's important that I draw the court's attention to, in addition to the tax loss harvesting provision, to exactly where some of the other key language is located that needs to be read in conjunction with the tax loss harvesting stuff that we've already talked about. And it's on page 189 of the joint appendix. It's part of the TD Ameritrade Service Agreement. And there's a paragraph on that page that has a bold heading, Strategy Assets. And it talks about what types of investments are going to be done in these accounts. The account is going to be allocated exclusively among exchange-traded funds of the domestic equity, international equity, emerging markets, domestic and international fixed income classes. So that's the only thing that this money can be invested in under the terms of the contract. Well, that sentence says supplement by cash. Go ahead. You're going to get this. With the exception, and that's the other part I was going to point out, is that approximately 1 to 3 percent of the account will be held in cash. There's money available to pay TD Ameritrade's fee or to otherwise have some liquidity in the account. So that's the problem here is after they sold Mr. Dole's stock fund that he held, and they waited 18 days to buy the replacement, which they were obligated to do. For that 18-day period, his assets weren't invested as they contracted for them to be. He was not invested in the U.S. stock market at all for 18 days. Did they pay some very small amount on cash? I don't know. I bet they do, but it's a very small amount per C. And you're probably correct about that. But the bigger thing is that he's not invested as they agreed and as the account was supposed to be. He's supposed to have a position in the U.S. stock market at all times. And that's why this 18-day delay that they want to excuse and say is correct. Are there other parts of the contract we should look at? I appreciate what you're doing. Those are the most important provisions. I think if the court understands those and the tax loss harvesting provisions, you can understand that what occurred here and what we've alleged is clearly a breach of the contractual terms. And furthermore, it doesn't involve any kind of misrepresentation or omission. These contract terms are very clear. The breach of the contract terms by what TD Ameritrade did here is very clear. And they engaged in a clear breach of contract. And attorneys have heard the advice, if the facts are against you, argue the law. If the law is against you, argue the facts. If the facts and the law are against you, pound the table. That's what they're doing. They're pounding the table. And they're hoping that this court will excuse their breach of contract because they didn't do what they were supposed to do and enter this transaction for Mr. Knowles. And they did the same thing to a lot of their other customers. Mr. Knowles lost a substantial amount of money because of what they did. And so did a lot of other people. And their only way out is to hope that the court doesn't understand these contracts and somehow throws them a lifeline. So we respectfully submit that if the court pays careful attention to what has been alleged in the Second Amendment complaint, which includes no allegations at all of any deceptive conduct, we're not seeking any remedies for disgorgement of ill-gotten gains. There's nothing of that sort involved in this factual scenario or alleged. And so there's a clear breach of clear contract terms. And the lower court decision should be reversed. And this case should be remanded for further proceedings. Okay. Thank both counsel for your argument in this case. Case number 19-3684 is submitted for decision by the court. That concludes our debate.